Kerry FLAHERTY, Appellant,

v.

Thomas A. COUGHLIN, III, Commissioner, New York State Department of Correctional Services, Clark K. Wilson, Director, Temporary Release Program, and Dana M. Smith, Assistant Director of Temporary Release Programs, Appellees.

No. 1184, Docket 83-2038.

United States Court of Appeals, Second Circuit.

Argued April 19, 1983.
Decided July 21, 1983.

Randolph Z. Volkell, New York City (David C. Leven, Prisoner Legal Services, New York City, of counsel), for appellant.

Richard Howard, Asst. Atty. Gen. for the State of New York, New York City (Robert Abrams, Atty. Gen. for the State of New York, Gerald J. Ryan, Asst. Atty. Gen. for the State of New York, New York City), for appellees.

Before FRIENDLY, WINTER and PRATT, Circuit Judges.

WINTER, Circuit Judge:

Appellant Flaherty appeals from the dismissal of his complaint which alleged that he was denied temporary release in retaliation for his having brought certain litigation. Until his parole on November 4, 1982, Flaherty was incarcerated in the New York state correctional facility at Taconic where he was serving concurrent terms for a variety of crimes including first degree robbery, criminal possession of a weapon, second degree robbery, and criminally negligent homicide. Although his prison record reflects numerous disciplinary infractions, Flaherty's conduct and record have improved dramatically in recent years, due in part apparently to his absorption in the profession of jailhouse lawyer.

Prior to his transfer to Taconic from the Eastern Correctional Facility in December, 1980, Flaherty completed 77 credits at Ulster Community College, earning a place on the Dean's List. After his arrival at Taconic, Flaherty worked full time as a clerk/librarian in the prison law library and in the spring of 1981 was granted clearance to travel unsupervised to the Bedford Hills Correctional Facility for Women in order to teach a course in legal research.

Flaherty also was—and is—an active litigant. The most significant of the numerous suits in which he has been involved, and one implicated in the instant litigation, is *Flaherty v. Coughlin,* 81 Civ. 3077 (S.D.N.Y. May 20, 1981). That class action challenged a statewide prison lockdown, imposed to enable guards to attend the funeral of fellow guard Donna Payant, and resulted in a temporary restraining order prohibiting the lockdown save as an emergency measure on an institution by institution basis.

In November, 1981, Flaherty applied for temporary release, N.Y.Correct.L. §§ 851–60 (McKinney Supp.1982–83), requesting "educational leave" to permit him to be absent from prison during the day in order to finish his college degree at New York University in Manhattan, *see* N.Y.Correct.L. § 851(7). Following the procedures outlined in N.Y.Correct.L. § 855, Flaherty submitted his application to the Temporary

Release Committee ("TRC") at Taconic which promptly approved his request. The TRC cited Flaherty's improved disciplinary record, his completion of 77 college credits, a favorable recommendation from the corrections officer who was his employer in the library, his activities as a law library clerk and a legal research instructor, and its belief that Flaherty's "continued involvement in a degree program will faster (sic) ... [his] ... positive return to the community." In recommending his release, the TRC also gave Flaherty a score on its Temporary Release Point System 16.7% above the minimum required for temporary release.

Because at least one of Flaherty's convictions involved the infliction of serious bodily injury, his application for temporary release required the written approval of the Commissioner of Corrections. N.Y.Correct.L. § 851(2). Clark K. Wilson, Director of Temporary Release Programs, acting for the commissioner, overruled the Taconic TRC, explaining that Flaherty "has a record of violent and aggressive behavior which is characterized by the use, or threatened use, of weapons and/or physical force." Wilson also found that Flaherty had twice violated parole, and that Flaherty had jumped bail during his second trial for criminally negligent homicide. While acknowledging Flaherty's "programmatic achievements," Wilson stated that Flaherty's overall disciplinary record was marginal and that "in light of the inmate's prior record he is to be viewed as a threat to the safety and health of the community."

Flaherty appealed Wilson's decision, disputing much of its factual basis and essentially arguing that Wilson relied on events ten years in the past. On reconsideration, Dana M. Smith, Assistant Director of Temporary Release Programs, affirmed Wilson's assessment of Flaherty's history and prospects for successful participation in the program. In addition, Smith cited Flaherty's "inability to handle community supervision (Parole)" as a reason why his application for temporary release should be denied. Subsequently, on June 3, 1982 Flaherty commenced the present suit, alleging a violation of 42 U.S.C. § 1983 in that "the decision to deny plaintiff temporary release was made in retaliation for his participation in the class action, *Flaherty v. Coughlin.*"

On August 12, 1982, Flaherty made a request for the production of documents which, he alleged, would enable him to prove his claim. On August 16, the Department of Correctional Services ("DOCS") agreed to provide all non-privileged documents in their possession regarding Mr. Flaherty's request for temporary release participation. In the interim and without providing the agreed upon documents, DOCS moved for summary judgment, contending that there was no dispute as to the facts that Flaherty has an extensive violent criminal record, had violated parole twice and jumped bail once. The DOCS also submitted documents purporting to be Wilson's decision overruling the TRC, Smith's decision affirming Wilson, a June 12, 1982, Memorandum from Mark Kinderman, Regional Coordinator of Temporary Release Programs, describing Flaherty as a person too dangerous to be placed in a work release facility, and Flaherty's prison disciplinary record. None of these documents was authenticated and none of the purported authors or other officials involved in the decision denying temporary release submitted affidavits attesting to the truth of the contents of the documents or to their own state of mind in rejecting Flaherty's application. Nor was verification offered that all relevant documents had been produced. Flaherty disputed the characterization of his criminal record as "extensive and violent," maintained that he had been convicted of only one parole violation, and argued that none of the evidence adduced precluded the existence of a retaliatory motive on the part of DOCS.

On December 29, 1982, Judge Griesa granted summary judgment stating that "against ... [the documents showing the denial of temporary release to plaintiff resulted from the nature of his criminal history and prison record] ... plaintiff offers nothing more than conjecture about a possible retaliatory motive." We believe sum-

mary judgment was improperly granted and reverse.

■ While "mere conclusory allegations or denials" are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case, *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978), caution should be exercised in granting summary judgment where state of mind is in issue or when the party opposing the motion has been denied relevant discovery. *Landmark Land Company v. Sprague, et al.*, 701 F.2d 1065 (2d Cir., 1983); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

The DOCS argues that permitting discovery to plaintiffs in retaliatory motive cases in the absence of specific and detailed factual allegations would lead to chaos in prison administration. Indeed, we have previously recognized that certain claims "are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, despite the general rule of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), detailed fact pleading is required to withstand a motion to dismiss." *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981) (citing, *inter alia*, *Fine v. New York*, 529 F.2d 70, 73 (2d Cir.1975) (conclusory claim of violation of civil rights, including subornation of perjury and coercion of witnesses by prosecutors insufficient without factual basis); *United States v. Berrios*, 501 F.2d 1207, 1211–12 (2d Cir.1974) (allegation of belief in prosecutor's vindictive motive insufficient to warrant a hearing in the absence of evidence).

We agree with the DOCS that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes. If full discovery were to be permitted on every such claim, the result would indeed be chaotic. However, some of these claims may have merit and, where that is the case, the prisoners making them must be accorded

the procedural and substantive rights available to other litigants.

■ The exact process to be followed will vary according to the circumstances of each case and district courts must exercise their sound discretion in determining the nature and amount of discovery to be allowed. The goal, however, is the same in each case: to sift out those claims where further discovery may possibly yield evidence in support of the prisoner's allegations from those where it is, or becomes, evident that no factual basis exists.

For example, a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case ought usually be pursued with full discovery. However, a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. In such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants. A third category of allegations also exists, namely a complaint which alleges facts giving rise to a colorable suspicion of retaliation. Such a claim will support at least documentary discovery. However, if the production of all relevant documents fails to add substance to the allegations and if the relevant officials submit affidavits explaining their reasons for the challenged actions, summary judgment dismissing the complaint may be granted but only after the district court determines that oral testimony is unnecessary. If documentary discovery does tend to support the claim or if the documentary record seems unduly sparse, the action may proceed to fuller discovery at the district court's discretion.

■ We believe this approach protects both prisoners and the correctional system. In applying it to the present case, we note that Flaherty's allegations of retaliatory motive on the part of DOCS were supported by some circumstantial evidence. This included his improved overall record; the minor nature of his most recent disciplinary violations; his constructive activities, including unsupervised travel to and from

Bedford Hills, an activity which appears to us to be similar to a work release program; the approval of the TRC; the denial of his application by central temporary release program officials after the issuance of the temporary restraining order in *Flaherty v. Coughlin;* and the decision of the parole board to grant Flaherty parole in November, 1982, despite its access to Flaherty's full record, which, some months earlier, was found to demonstrate that Flaherty was a danger to the community. Viewed as a whole, this evidence, involving as it does a contestable denial of temporary release which is possibly inconsistent with the grant of parole shortly thereafter, and the involvement of the prisoner in major successful litigation against such officials, gives rise to a colorable suspicion of retaliation, pled as specifically as is possible without discovery.

Defendants' motion for summary judgment was accompanied by a variety of relevant documents but without verification either that they were authentic or that they constituted all the relevant documents in the defendants' possession. Since verification can easily be provided and does establish evidentiary links essential to the motion, we see little reason not to require it as a prerequisite to a grant of summary judgment. More importantly, the motion was not accompanied by affidavits by the relevant correctional officials setting out their reasons for denying Flaherty temporary release. These too are essential not only to support the motion but also to enable the district court to determine whether further discovery in the way of depositions ought to be allowed. We reverse and remand, therefore.

Upon remand, defendants may resubmit their motion along with the affidavits described above. If the district court then determines that Flaherty's allegations are too conjectural to withstand the documents and sworn statements supporting the motion and that oral testimony would add nothing to his claim, it may grant the motion. If it believes either that further discovery might be useful or that a genuine issue of material fact exists, it may deny the motion and order further proceedings as necessary.

Reversed and remanded.