**Carlos VEGA, Plaintiff,**

v.

**Richard W. DeROBERTIS, et al., Defendants.**

**No. 83 C 5426.**

United States District Court, N.D. Illinois, E.D.

Sept. 10, 1984.

Supplemental Opinion and Order Oct. 3, 1984.

A. Sidney Katz, Eric C. Cohen, and Jacqueline A. Leimer, Chicago, Ill., for plaintiff.

Neil F. Hartigan, Stephen G. Kehoe, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Carlos Vega ("Vega"), an inmate confined at Stateville Correctional Center ("Stateville") in Joliet, Illinois, has sued several defendants in their official capacities as officers of the Illinois Department of Corrections ("IDOC"). Vega claims defendants, acting under color of state law, violated his rights under the Fifth, Eighth and Fourteenth Amendments.[1] Accordingly he sues under 42 U.S.C. § 1983 ("Section 1983") for declaratory and injunctive relief as well as compensatory and punitive damages.

Though his complaint is in two counts, Vega actually asserts three kinds of injury:

1. Allegedly as a result of defendants' conduct in connection with three separate disciplinary proceedings, Vega was found guilty and punished on at least some of the charges brought despite the insufficiency of the evidence adduced against him to establish guilt. That assertedly violated his due process right to be found guilty only on the basis of sufficient evidence.[2]

---

1. As always this Court bows to conventional usage (because it is convenient though conceptually imprecise) by referring to the underlying Bill of Rights provisions instead of to the Fourteenth Amendment alone—the only provision literally applicable to *state* actors. After all it is true courts have treated those Bill of Rights provisions as having been intended by the Fourteenth Amendment to be made applicable to the states. But it betrays a lack of thought about the concept for Vega's Complaint to speak of the *Fifth* Amendment in those terms, for its Due Process Clause surely has no different content for state actors than does the Fourteenth Amendment's own identical clause.

2. Unquestionably the punishment meted out as a result of the disciplinary actions deprived Vega of liberty. See *Wolff v. McDonnell,* 418 U.S. 539, 555–58, 94 S.Ct. 2963, 2974–76, 41 L.Ed.2d 935 (1974). At issue here is rather whether the procedure afforded Vega met due process standards under the analysis in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In that respect, of course, "one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff,* 418 U.S. at 560, 94 S.Ct. at 2977. Thus the need "to preserve internal order and discipline and to maintain institutional securi-

2. Other alleged facts suggest the disciplinary proceedings were initiated in retaliation against Vega for his efforts as a law clerk on behalf of inmates prosecuting claims before administrative bodies and the courts. Such claimed discriminatory treatment invokes the Equal Protection Clause.

3. Vega's punishment, and the maintenance of records falsely showing he had violated institutional rules, under the circumstances described in the two preceding paragraphs are said to violate his Eighth Amendment guaranty against cruel and unusual punishment.

Defendants have now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, their motion is granted.

### Facts

Vega complains of three separate incidents within the space of five months (one on May 17, one on August 4 and one on September 11, 1983[3]), each resulting in disciplinary proceedings against him. When those incidents occurred Vega worked in the Stateville law library as a law clerk (a position he continues to hold). In that capacity he has assisted Stateville inmates in prosecuting claims before administrative agencies and the courts. Vega Aff. ¶ 2.

On May 17 Vega was ordered by defendant Officer Victor Stone ("Stone") to stand for the morning count. Established procedure, until recently not vigorously enforced by Stateville officials, requires "all inmates ... to get out of bed and stand near the front of the cell until the gallery is counted." Pl. Ex. A. Even though neither of Vega's cellmates was standing at the time, Vega says he alone was ordered to his feet.[4] After Vega had refused two orders to stand, Stone ordered him to surrender his identification card. Again Vega refused. After further orders and refusals, Vega finally remarked:

> I am tired of this fucking bullshit, that is the way fucking riots start, you fucking people with your fucking bullshit.

At that point Vega surrendered his identification card. See Pl. Exs. B, D.

As a result of the confrontation Stone issued an Inmate Disciplinary Report ("IDR") charging Vega with several violations, including intimidation or threats, insolence and disobedience of a direct order. Pl. Ex. B. When he appeared before the Adjustment Committee ("AC") on the charges, Vega admitted both his refusal to stand and his quoted statement. Instead he argued his conduct had not risen to the level of intimidation or threats as defined in the disciplinary regulations.

At the first grievance level the AC found Vega guilty on the basis of his admission of the facts stated in the IDR. It ordered Vega (1) transferred to segregation and (2) demoted to "C" grade (both for thirty days) and also (3) deprived of thirty days of stat-

---

ty," *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), justifies deference to prison administrators in the conduct of disciplinary proceedings. See *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983).

**3.** Because all the operative dates were in 1983, this opinion will simply omit any further year designations.

**4.** On the current summary judgment motion that statement in Vega's affidavit must be credited. *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). All the same it is worth noting that assertion is reflected nowhere in the record of the disciplinary proceedings connected with this incident. More significantly, Vega himself did not assert such discrimination in his grievance filed with the Stateville Institutional

Inquiry Board ("IIB"). There he made only the following observation (Pl.Ex. D, reproduced verbatim here):

> [T]he way that the institutional count procedures are being enforced, it would be understandable for any inmate to react in the manner that I, myself did. I'm sure I wont be the only one.
>
> The sudden reenforcement of these rules to stand for count is a form of harassment towards all prisoners confined here in Stateville and in my opinion, is a method in which to provoke an atmosphere, within the institution anxiety and animosity among inmates and correctional officers. Such sudden enforcement of this rule is arbitrary, it has'nt been enforced for the past five (5) years.

utory good conduct credits. Pl. Ex. C. Vega then filed a grievance with the IIB, arguing the evidence before the AC was insufficient to sustain a finding of guilt on the charge of intimidation or threats. Pl. Ex. D. While the IIB denied redress, the Administrative Review Board, convened under administrative regulations to review the revocation of Vega's good conduct credits, concluded the charge of intimidation or threats was not supported by the content of the IDR. On the Board's recommendation, that charge was expunged from Vega's record and the thirty days of good conduct credit were restored.

On August 4 defendant Officer Roger Davis ("Davis") discovered a pair of boxing gloves and a piece of metal measuring 16 ″ × ⅛ ″ × 1″ in Vega's cell. Davis issued an IDR charging Vega with possession of dangerous contraband and unauthorized property. Pl.Ex. G. Before the AC Vega admitted the gloves and metal had been found in his cell, but he denied ownership of the gloves and the fashioning of the metal into a weapon (as Davis testified). Pl.Ex. H. Moreover Vega says although he asked the members of the AC to examine the piece of metal themselves, they refused to do so. Rather it found him guilty on the basis of his admission the objects had been found in his cell, coupled with Davis' report. Vega Aff. ¶ 9, Pl.Ex. H. It ordered Vega (1) transferred to segregation and (2) demoted to "C" grade (both for 180 days) and also (3) deprived of 180 days of statutory good conduct credit. Pl.Ex. H. Upon reviewing Davis' report and examining the piece of metal, defendant Stateville Warden [5] Richard DeRobertis ("DeRobertis") reduced the penalty imposed by the AC to 15 days of segregation and demotion to "C" grade for 30 days. Pl.Ex. I.

Finally, on September 11 defendant Officer James Carver ("Carver") ordered Vega to lock up. Vega (who later claimed he did not hear the order) failed to respond. Once Vega had returned to his cell, Carver ordered him to surrender his identification card, whereupon Vega told Carver (as paraphrased by Carver) "he was not giving me anything and that I had *better* get out of his face." Pl.Ex. J. Carver issued an IDR charging Vega with various violations, including intimidation or threats, insolence and disobedience of a direct order. Pl.Ex. J. Based on Carver's statement and Vega's admission that a confrontation had occurred, the AC found Vega guilty of all charges except that of intimidation or threats and ordered him transferred to segregation for a period of 15 days. Pl.Ex. K.

### Bases for Summary Judgment

Defendants' motion focuses primarily on Vega's claim of guilty findings—at least on certain charges in the IDRs—based on insufficient evidence. As Def.Mem. 1–2 puts it:

> Simply stated, plaintiff's basic claims [sic] is that on three ocassions [sic] he was punished by the Defendants without sufficient evidence of his guilt.

In defendants' view no genuine issue as to any material fact exists as to that claim (and implicitly as to the entire action), entitling them to judgment under prevailing law. Because defendants bear the burden of establishing the nonexistence of a genuine issue of material fact,[6] it makes sense to begin the analysis by examining their principal argument, putting aside for the moment Vega's second and third claims.

### 1. *Quantum of Evidence*

 Prison inmates have a due process right not to be found guilty of a disciplinary offense except on the basis of sufficient evidence. See *Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir.1981) and cases

---

**5.** That was DeRobertis' position at the time. Since then he has moved up the IDOC chain of command.

**6.** That burden always rests on a Rule 56 movant. Moreover any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. They must however be reasonably-drawn inferences. *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984).

there cited. "Sufficient evidence," however, is scarcely a de novo standard. Instead the findings of a prison disciplinary proceeding are not subject to attack as a due process violation unless "no reasonable adjudicator could have found the prisoner guilty of the offense charged on the basis of the evidence presented...." *Jackson v. Carlson*, 707 F.2d 943, 949 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983). See also *Woodall v. Partilla*, 581 F.Supp. 1066, 1074–75 (N.D. Ill.1984) (applying the *Jackson* standard).

Against that benchmark, the findings as to all three incidents surely pass muster. In that respect it must be emphasized the relevant inquiry is the *final* determination in each disciplinary proceeding, not (as Vega would have it) the initial determination at the AC level. Any doubts this Court might have about the constitutional adequacy of the AC's findings in any instance are altogether dispelled by the fact that any potential deficiencies were put right in the normal course of administrative review.[7]

It may strain the language to characterize Vega's May 17 remark to Stone as intimidating or threatening, especially in the context of prison society. While the intermediate IIB level sustained the AC's finding of guilt on that charge, the Administrative Review Board reversed it as unsupported by the content of the IDR. True enough, the AC's findings on the other charges stemming from the May 17 incident were sustained on review, but there can be no doubt they met the *Jackson* standard.

In like manner, the August 4 incident gave rise to an arguable lapse by the AC, which found Vega guilty of possessing dangerous contraband solely on the basis of Davis' statement the metal bar had been fashioned into a weapon. Even though Vega denied that characterization, the AC refused his request that they actually view the object. That however was soon corrected. After reviewing Davis' account of the incident and examining the alleged weapon, DeRobertis reduced the penalty imposed on Vega. In the end Vega was punished for possessing contraband (the boxing gloves) but not for possessing a weapon—and that was clearly reasonable (it involved only a permissible resolution of · the credibility of Vega's claim that the gloves were not his).

As to the September 17 incident, the record reflects no review of the AC's findings. But in this instance the AC's disposition of the charges was unobjectionable. Of its own accord it absolved Vega on the dubious charge of intimidation or threats, imposing a penalty commensurate with the offenses adequately proved.

■ It is difficult to see any rational basis for Vega's due process claim. Any doubts about the adequacy of the process afforded Vega before the AC are dissipated by the disposition on review. As a result of the effectiveness of the review process, Vega suffered no deprivation of liberty—whether confinement to segregation, demotion to "C" grade or loss of good time credits—greater than was appropriate for the offenses of which he was found guilty on the basis of constitutionally sufficient evidence. Accordingly defendants are entitled to summary judgment on Vega's claim he was denied due process of law.

## 2. *Retaliatory Prosecution*

Despite defendants' overall summary judgment motion, they do not specifically address Vega's allegations of retaliatory and discriminatory prosecution. Vega's counsel *has* addressed the claim in his opposing memorandum as well as in his affidavit. This opinion will assume:

1. Defendants intend their motion as to the two claims of injury to stand on the record.

---

**7.** Had Vega sustained punishment, based on a flawed AC finding, in excess of the punishment imposed under a reasonable final administrative decision, it would be appropriate to apply *Jackson* to the AC findings. That was not the case here.

2. Defendants having offered no contrary evidence, Vega's version of the facts is true.

Nearly a century ago *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886) issued the Supreme Court's classic statement about selective prosecution:

> Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

That principle is as applicable to officials enforcing prison rules as it is to prosecutors.

Nevertheless prisoner claims of retaliatory disciplinary action present especially difficult questions for courts when prison officials move for summary judgment in their favor. On the one hand, questions of motive and intent underlying such claims (like all questions of intent) are particularly inappropriate for summary judgment. *Cedillo v. International Association of Bridge & Structural Iron Workers,* 603 F.2d 7, 11 (7th Cir.1979); but see *Parker v. Federal National Mortgage Association,* 741 F.2d 975, 980 (7th Cir.1984), *aff'g* 567 F.Supp. 265, 270 (N.D.Ill.1983) (party opposing summary judgment must adduce *facts,* not conclusory allegations, raising genuine issue as to intent). On the other hand, such claims are especially prone to abuse. It is easy for a prisoner to allege bad motive and thereby to embroil prison officials in protracted yet groundless litigation. Given those competing considerations, the appropriate course for the court is to scrutinize the record with particular care and to deny summary judgment (1) if the prisoner's claim is stated in the testimonial form required by Rule 56(e) or (2) if it

appears other facts provide reasonable circumstantial support for a claim stated in a form not itself admissible into evidence as based on personal knowledge of the prisoner as a competent witness.[8] See *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

■ Following a close examination of the pleadings, the records of the disciplinary proceedings and Vega's affidavit, this Court must conclude (notwithstanding defendants' failure to file a reply memorandum addressing the issue) Vega has failed to raise a factual issue sufficient to withstand summary judgment. Vega's Aff. ¶ 14 says only:

> I believe that the officers writing the disciplinary tickets intentionally discriminated against me because of my status as a law clerk. I believe this because of statements made to me by these officers. I have seen the guards discriminate against other law clerks in the same manner as I have been discriminated against. I have also seen inmates who are not law clerks engage in conduct similar to that with which I have been charged but those inmates did not receive tickets for that conduct.

Those assertions are wholly conclusory and skeletal. They do not present the level of particularity—as to even a single specific instance, as distinct from Vega's subjective belief—to which a witness would have to testify from the stand. They are wholly wanting as the kind of support required by Rule 56(e).

That being so, Vega must depend on reasonable inferences from the other evidence—the *objective* evidence. On that score the record reflects Vega had received six disciplinary reports during the two-year period preceding May 23—the duration of his confinement at Stateville (see Pl.Ex. F). In those terms, the issuance of three added reports between May 17 and September 11 appears in no way extraordinary. Nor does the filing of ultimately unsustainable charges by itself suggest retaliatory prose-

---

**8.** In either such event a grant of summary judgment would represent a weighing of evidence, clearly impermissible on a Rule 56 motion.

*First National Bank Co. of Clinton, Illinois v. Insurance Co. of North America,* 606 F.2d 760, 767 (7th Cir.1979).

cution. Each IDR was issued following an acknowledged confrontation between Vega and prison authorities, the circumstances of which provided some basis for the charges filed. So, too, this Court cannot infer bad motive on the part of prison officials from the mere fact that certain of the AC's findings were reversed on review.

True enough, had the facts surrounding the three charges (at worst neutral on the issue of defendants' intent) been coupled with evidence (for example) that Vega's efforts as a law clerk were unusually successful or that, contemporaneously with the incidents at issue, he had been instrumental in obtaining a decision particularly bothersome to prison authorities, that might have been sufficient to give rise to a colorable suspicion of retaliation.[9] But nothing in the record provides any basis for drawing such conclusions about Vega's efforts in the law library or for otherwise linking the disciplinary prosecutions to his status as law clerk. Accordingly defendants' motion is granted as to Vega's claim of retaliatory prosecution.

### 3. *Eighth Amendment*

 Vega also claims he was and continues to be subjected to cruel and unusual punishment because he was confined in segregation for 60 days without justification and because prison files falsely reflect he was guilty of certain disciplinary violations. No additional facts were alleged on that score in the Amended Complaint (the "Complaint").[10] Instead its Count I simply wraps up the same factual package already discussed under a different label: that of the Eighth Amendment. But the same discussion that has just rejected Vega's due process and equal protection claim demonstrates conclusively there was nothing "cruel" or "unusual" about the punishment meted out to Vega.

Apparently recognizing that redundancy of claims, Vega's response to defendants' motion now for the first time asserts that while in segregation he was subjected to conditions that would shock the conscience of modern society. See *Chavis*, 643 F.2d at 1291. Vega Aff. ¶ 13 says:

During each period that I was confined in segregation, I received no personal toiletries and no bed linens or towels. I was allowed to shower only every other week. I was never given cleaning materials or a broom for my cell, which was filthy and infested with roaches. The food was cold and both roaches and flies were found in the food. The cell was improperly ventilated and although these were the warm summer months, the heat was on so that the temperature exceeded 100 degrees.

 That is really a different lawsuit from the present one. Nothing in the Complaint, which properly bounds Vega's causes of action, has even hinted at such a set

9. Compare for example *Flaherty*, 713 F.2d at 13–14, where the court found facts sufficient to survive defendants' motion for summary judgment on a retaliation claim:

[W]e note that Flaherty's allegations of retaliatory motive on the part of [the Department of Correctional Services] were supported by some circumstantial evidence. This included his improved overall record; the minor nature of his most recent disciplinary violations; his constructive activities, including unsupervised travel to and from Bedford Hills, an activity which appears to us to be similar to a work release program; the approval of the [Temporary Release Committee]; the denial of his application by central temporary release program officials after the issuance of the temporary restraining order in *Flaherty v. Coughlin* [a class action challenging a statewide prison lockdown]; and the decision of the parole board to grant Flaherty parole in November, 1982, despite its access to Flaherty's full record, which, some months earlier, was found to demonstrate that Flaherty was a danger to the community. Viewed as a whole, this evidence, involving as it does a contestable denial of temporary release which is possibly inconsistent with the grant of parole shortly thereafter, and the involvement of the prisoner in major successful litigation against such officials, gives rise to a colorable suspicion of retaliation, pled as specifically as is possible without discovery.

10. This Court appointed counsel to represent Vega shortly after he had filed his initial pro se complaint. After consultation with Vega counsel filed an Amended Complaint last November, its Eighth Amendment claims being of the purely derivative type described in the text.

of facts, wholly new and different from the charges focused on in this opinion. Only now, faced with a loser on those charges, does Vega seek to shift gears entirely. Even under the liberal pleading doctrines embodied in the federal rules, a plaintiff cannot avoid summary judgment by asserting new facts and a new theory of injury on the eve of disposition of his original claim. *Kelsey v. State of Minnesota,* 565 F.2d 503, 507 (8th Cir.1977).

### Conclusion

There is no genuine issue of material fact, and defendants are entitled to a judgment as a matter of law. This action is dismissed.

### SUPPLEMENTAL OPINION AND ORDER

Carlos Vega ("Vega") has moved for reconsideration of this Court's September 10, 1984 memorandum opinion and order (the "Opinion," 598 F.Supp. 501 granting summary judgment to defendants under Fed.R. Civ.P. ("Rule") 56. Vega's motion is procedurally flawed:

1. Viewed as a motion to alter or amend the summary judgment, it is untimely under Rule 59(e).

2. Viewed as a motion for relief from the judgment, it does not satisfy the standards of any of the subparagraphs of Rule 60(b).

Nonetheless this memorandum opinion will deal with the motion's lack of substantive merit.

Vega argues the segregation punishment on his May 17, 1983 disciplinary ticket was greater than the maximum permitted under the Administrative Regulations ("ARs") in effect at Stateville Correctional Center. If so, this Court was in error in stating (Opinion at 505):

As a result of the effectiveness of the review process, Vega suffered no deprivation of liberty—whether confinement to segregation, demotion to "C" grade or loss of good time credits—greater than was appropriate for the offenses of which he was found guilty on the basis of constitutionally sufficient evidence.[1]

That however does not equate with a due process violation. It will be remembered (Opinion at 505, quoting *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.), *cert. denied,* ─── U.S. ───, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983)) that:

Instead the findings of a prison disciplinary proceeding are not subject to attack as a due process violation unless "no reasonable adjudicator could have found the prisoner guilty of the offense charged on the basis of the evidence presented...."

If Vega's punishment in fact exceeded the AR maximum under the Administrative Review Board decision, that only makes it "appropriate to apply *Jackson* to the AC findings" (Opinion at 505 n. 7).

True enough, "[i]t may strain the language to characterize Vega's May 17 remark to Stone as intimidating or threatening, especially in the context of prison society" (Opinion at 505). But that does not mean "no reasonable adjudicator could have found the prisoner guilty of the offense charged on the basis of the evidence presented"—it rather means merely that many (or perhaps most) reasonable adjudicators would not. This Court does not find the AC determination to have been wholly arbitrary, and that bars the conclusion that a due process violation occurred.

In like manner, as Opinion at 507 reflects, Vega's original Eighth Amendment claim had no substantive content beyond his due process claim. Certainly 23 days in segre-

---

**1.** As Vega's current Mem. 2 n. 1 acknowledges, that statement was made in justifiable reliance on defendants' submission in support of their summary judgment motion. Vega did not challenge that statement on the present (or any other) grounds in response to defendants' motion. Indeed Vega's present argument was not even hinted at, let alone specifically made, in his response to the original motion. Thus the argument might properly be considered as having been waived, or alternatively any claimed error in the Opinion might be viewed as induced error.

gation is not "cruel" or "unusual" in the constitutional sense where:

(1) the original decision as to Vega's guilt was reasonable and would have supported a 23-day term and

(2) the ultimate conclusion as to Vega's guilt would have justified a 15-day term in any event.

### Conclusion

Vega's current motion does not conform to the requirements of either Rule 59(e) or Rule 60(b). Even were that not so, it would not prevail. In any case it must be and is denied.