**Jonathan JOHNSON, Plaintiff–
Appellant,**

v.

**B. EGGERSDORF, Correction Officer
and several unknown defendants,
Defendants–Appellees.**

No. 99–0174.

United States Court of Appeals,
Second Circuit.

May 17, 2001.

Abid Qureshi, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY; Jonathan M. Jacobson on the brief, for appellant.

Patrick Barnett–Mulligan, Albany, NY; Eliot Spitzer, Attorney General; Nancy A. Spiegel, Assistant Solicitor General; Peter H. Schiff, Senior Counsel; on the brief, for appellees.

Present OAKES, WINTER and STRAUB, Circuit Judges.

*SUMMARY ORDER*

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Plaintiff–Appellant Johnathan Johnson appeals from an Order of Dismissal entered May 28, 1999 by the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) adopting a Report–Recommendation issued by United States Magistrate Judge Ralph W. Smith, Jr. which recommended dismissing Johnson's 42 U.S.C. § 1983 complaint. While Johnson proceeded *pro se* before the District Court, he now is represented by counsel on appeal.

Johnson, an inmate in the custody of the New York State Department of Correctional Services confined (at the time of the alleged incidents) at the Auburn Correctional Facility, alleged that Eggersdorf harassed him because of the interracial nature of his marriage. In addition, on June 23, 1997, during a visit by Johnson's wife to the prison, Eggerdorf and several other officers allegedly told him that his wife's pants were too short and required him to sit with his legs at a ninety degree angle to the visiting room table. Based on this incident, Johnson filed an inmate grievance report against Eggersdorf. On June 23 and 24, 1997, misbehavior reports were issued against Johnson for behaving in a threatening and disruptive manner, failing to obey a direct order, and touching his wife inappropriately in the prison visiting room. Johnson alleges that these charges were fabricated. In various court documents, Johnson also alleged that on October 27, 1997, a visiting room correction officer told him that the officer would "have it out for [Johnson's] ass and the other visiting [room] officers also" and that when he told an unidentified officer that

Eggersdorf had filed a retaliatory disciplinary report against him, the officer replied that he "didn't give a shit." Finally, Johnson alleged that another officer told his wife that the hearing officer who would consider Johnson's disciplinary charges had "predetermined the disposition into the allegations of the report of C.O. Eggersdorf." After administrative hearings were held, Johnson was found guilty of the disciplinary charges and penalized by confinement to his cell for ninety days. In addition, his wife's visiting privileges were suspended for ninety days. Although the grievance Johnson filed was apparently investigated, it was denied.

Johnson filed a *pro se* complaint on July 3, 1997 alleging that his constitutional rights were violated when the correction officers retaliated against him for filing grievances and verbally harassed him with racial epithets. After filing an initial, "supplemental," and amended complaint, Johnson attempted to amend his complaint for a third time (referred to as his "second amended complaint") to allege that his due process rights were violated when the grievance charges that he filed were not fully and fairly investigated. Johnson's motion to amend was denied without prejudice on December 10, 1997 (Gustave J. DiBianco, *U.S. Mag. Judge*) because the proposed amended pleading did not meet the local rules of the Northern District of New York. This order was affirmed by the District Court on July 22, 1998. Although permitted to do so, Johnson did not thereafter submit an amended complaint that conformed to the local rules. On April 27, 1999, the Magistrate Judge (Ralph W. Smith, Jr., *U.S. Mag. Judge*) recommended that Johnson's complaint be dismissed; the District Court affirmed this order on May 28, 1999.

■ On appeal, Johnson urges that we read his pleadings to establish three

causes of action: (1) that he was forced to endure racial slurs and other verbal harassment from the correction officers; (2) that he was denied the due process of law in regard to the grievance he filed against the correction officers and in regard to the disciplinary charges filed against him; and (3) that the correction officers filed false disciplinary reports against him in retaliation for the grievances that he filed. In considering Johnson's claims, we are mindful that we typically afford a *pro se* plaintiff a wide degree of latitude and read the pleadings liberally "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999). However, we also note that Johnson—who recently had as many as twelve suits simultaneously pending in the Northern District of New York, see Report–Recommendation of Ralph W. Smith, April, 27, 1999 at 1 n. 1—is "an extremely litigious inmate who is quite familiar with the legal system and with pleading requirements." *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir.1994). Therefore, the deference usually granted to *pro se* plaintiffs need not be expansively drawn in this case. *See id.*

### (1) *Verbal Abuse*

■ In this Circuit, allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); *Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y.1998) (finding that a claim for verbal harassment may be sustained if emotional or psychological injury is alleged, but stating "that plaintiff's allegations of any psychological and emotional scars attributable to defendants' conduct to be *de minimus* under the facts of this case"). While Johnson concedes

that he has not alleged emotional, psychological or other injury, he argues that "a pro se litigant should be given at least one opportunity to allege specific injury before his complaint is dismissed...." Brief for Plaintiff–Appellant at 21. However, Johnson was given ample opportunities to amend his complaint—he filed an initial, supplemental, and amended complaint. Moreover, after the District Court affirmed the Magistrate's denial of Johnson's motion to file a second amended complaint on July 22, 1998 (which would have been his fourth pleading in this case), Johnson had over nine months to file still another pleading prior to the Magistrate's decision to dismiss the action on April 27, 1999. Considering Johnson's experience as a litigant, he has no cause to complain that he was not afforded an opportunity to plead a cause of action. Therefore, the dismissal of this claim was proper.

### (2) *Due Process*

■ Johnson argues that his due process rights were violated both in regard to the grievance he filed against the correction officers, and in regard to the disciplinary hearing considering the charges against him. Even liberally construing Johnson's complaint, Johnson failed to plead a due process violation. It was only in his second amended complaint, which was rejected without prejudice, that Johnson for the first time alleged a due process violation—and even there Johnson only alleged a due process violation in regard to the grievance that he filed, not in regard to the disciplinary violations filed against him. Because they were not pleaded, neither the District Court nor the Magistrate addressed these claims. Thus, because they were not pleaded or considered below, Johnson's due process claims are not properly before this Court.

(3) *Retaliation*

In order to plead a claim under § 1983, the "plaintiff must allege that the defendant (1) acted under color of state law and (2) deprived him of a constitutionally protected right." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986).[1] It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right. *See Graham v. R.J. Henderson,* 89 F.3d 75 (2d Cir.1996) ("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."). Ordinarily, a plaintiff can survive a motion to dismiss based on the pleadings so long as he has alleged facts, that if proven, would support a cause of action. However, because of the "ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). Because of the potential for abuse, "we have insisted on a higher level of detail in [the] pleading[s]," *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987), and held that "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). In *Flaherty,* we divided prisoner retaliation claims into three categories: (1) "a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case ought usually to be pursued with full discovery;" (2) "a complaint which alleges facts giving rise to a colorable suspicion of retaliation . . . .

[s]uch a claim will support at least documentary discovery;" (3) "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone . . . . [i]n such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants." *Id.*

We find that Johnson's allegations of retaliation fall into the last of the above categories. Johnson has merely juxtaposed the grievances he filed against disciplinary charges filed against him. Given the heightened pleading requirements for prisoner retaliation claims, Johnson must allege specific facts that raise a likelihood that his allegations will lead to a valid retaliation claim. As to the statement that certain officers had "it out for his ass," Johnson has failed to even allege that the declarant of this statement was one of the officers who participated in filing disciplinary charges against him or link this statement—made several months after the alleged retaliatory charges were filed—to the allegedly retaliatory conduct. Nor does an unidentified officer's statement of indifference regarding retaliation against Johnson provide support for his claims. Similarly, the statement allegedly made to his wife that the hearing officer was predisposed to rule against him has little bearing on the conduct that Johnson claims as retaliatory—the filing of false disciplinary charges against him. In short, Johnson has alleged neither specific facts nor direct evidence that "giv[e] rise to a colorable suspicion of retaliation." *Id.* Therefore, we find that Johnson's claims

---

1. We note that in adopting the Magistrate's Report–Recommendation, the District Court incorrectly relied upon *Mt. Healthy School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Mt. Healthy* sets forth the appropriate standard for a § 1983 claim at trial, not for a motion to dismiss based on the pleadings.

are too conclusory to warrant subjecting the defendants to the costs of discovery.

We have examined Johnson's other claims and find them to be without merit. For the foregoing reasons the decision of the District Court is AFFIRMED.