Kenneth E. MOORE, Plaintiff,

v.

Correctional Officer J. PETERS, Lieutenant Reynolds, Superintendent Ricky Barlett, Area Supervisor Philip Overfield, and Estate of Larry Caslin, Defendants.

No. 13–CV–6271 EAW.

United States District Court, W.D. New York.

Signed March 13, 2015.

Kenneth E. Moore, Laurelton, NY, pro se.

J. Richard Benitez, NYS Attorney General's Office, Department of Law, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

Plaintiff Kenneth E. Moore, a former parolee attending the Willard Drug Treat-

ment Campus ("Willard") and former inmate at Five Points Correctional Facility ("Five Points"), brings this action alleging violations of 42 U.S.C. § 1983, for violation of his Fourteenth Amendment due process rights and retaliation. (Dkt. 1). Currently before the Court are Plaintiff's motion for partial summary judgment and Defendants' cross-motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkt. 27, 32). For the following reasons, Defendants' cross-motion for judgment on the pleadings is granted in part and denied in part, and Plaintiff's motion for partial summary judgment is denied.

## BACKGROUND

Plaintiff's claims arise from events that occurred at Five Points and Willard between January 3, 2011, and January 7, 2012. (Dkt. 1 at 2). Defendants are employees of Willard.[1] (*Id.* at 1–2). The following facts are taken from the allegations in Plaintiff's complaint.

On January 3, 2011, Plaintiff was placed on parole with the condition that he complete Willard's drug treatment program. (*Id.* at ¶ 8). Plaintiff arrived at Willard on January 25, 2011, with a target program completion date of May 3, 2011. (*Id.*). Plaintiff's evaluations at Willard determined that Plaintiff did not have a history of drug or alcohol abuse. (*Id.*). Plaintiff subsequently wrote to the New York State Office of Alcohol and Abusive Services, Department of Correctional Services, and the Division of Parole, to notify these entities that "his presence at Willard was problematic because he lacked a proper diagnosis pursuant to the DSM IV."[2] (*Id.* at ¶ 9). Plaintiff's letter is attached as Exhibit A to his complaint.

Willard's Deputy Superintendent of Programs wrote to Plaintiff and advised him that he could sign out of Willard. (*Id.* at ¶ 10). The Deputy Superintendent's letter is attached as Exhibit B to Plaintiff's complaint. Plaintiff alleges that he did not sign out of Willard because "the onus was on the state to correct their error of maintaining [Plaintiff's] participation at Willard," and because Plaintiff would "forfeit his liberty interest of being released into the community on May 3, 2011, if he were to sign-out of Willard on his own volition." (*Id.*). Senior Parole Officer Larry Caslin ("Caslin") also responded to Plaintiff's letter, and told Plaintiff that "unless his mind, body, and soul conformed to the Willard philosophy he would make sure that plaintiff did not finish the program." (*Id.* at ¶ 12).

On or about February 23, 2011, Plaintiff allegedly witnessed two correction officers assault another Willard participant. (*Id.* at ¶ 13). Plaintiff knew one of the correction officers as Correction Officer J. Peters ("Peters") and submitted a "statement" to a Willard sergeant reporting the assault. (*Id.*). Plaintiff's statement is attached as Exhibit C to the complaint. Over the following days, Plaintiff and others in his "platoon" discovered that defendant Peters was aware of Plaintiff's statement accusing him of assault. (*Id.* at ¶ 14). Plaintiff alleges that defendant Peters' demeanor toward Plaintiff became "hostile to the point that plaintiff felt compelled to tell

---

1. "Willard is a drug treatment program for parolees and can be used as an alternative to incarceration for parole violators." *Roundtree v. Bartlett*, No. 10–CV–0828A(F), 2011 WL 666173, at *2, 2011 U.S. Dist. LEXIS 14126, at *5 (W.D.N.Y. Feb. 11, 2011).

2. "DSM–IV" is the "Diagnostic and Statistical Manual of Mental Disorders–IV–TR, Front Matter, Multiaxial Assessment (2000 ed.)." *See Cabrero–Gonzalez v. Colvin*, No. 13–CV–6184–FPG, 2014 WL 7359027, at *6 n. 8, 2014 U.S. Dist. LEXIS 177058, at *19 n. 8 (W.D.N.Y. Dec. 23, 2014).

other staff members ... that he felt that Defendant Peters was set to take revenge against plaintiff." (*Id.*).

Plaintiff alleges that on or about March 12, 2011, defendant Peters executed on his plan for revenge by drafting and submitting a fictitious misbehavior report against Plaintiff. (*Id.* at ¶ 15). The misbehavior report accused Plaintiff of six rule violations (*id.*), and is attached as Exhibit D to Plaintiff's complaint. Defendant Peters also allegedly "isolated plaintiff away from his platoon and proceeded to try and provoke plaintiff by making racially incise remarks." (*Id.*). Plaintiff further alleges that defendant Peters told him that "notwithstanding the fact that his time at Willard was defacto over, that he, Defendant Peters wanted the opportunity to send plaintiff to the hospital as a bonus." (*Id.*).

Plaintiff alleges that he was subsequently taken to an isolation cell where he spent the night. (*Id.* at ¶ 16). The next morning, another correction officer came to Plaintiff's cell and served him with the fraudulent misbehavior report. (*Id.*). The report stated that the other 49 members of Plaintiff's platoon witnessed Plaintiff's disruptive behavior. (*Id.*). Plaintiff thereafter chose six of his platoon members to refute defendant Peters' allegations at any disciplinary hearing held as a result of the report. (*Id.*).

Plaintiff alleges that he was "inexplicably" transferred to Five Points on the morning of March 13, 2011, notwithstanding the fact that he was a participant in the Willard program, and he "hadn't had his Tier hearing." (*Id.* at ¶ 17).

Lieutenant Reynolds ("Reynolds") presided over Plaintiff's Tier II hearing at Five Points. (*Id.* at ¶ 18). Plaintiff alleges that defendant Reynolds told him that the six witnesses Plaintiff had selected to testify would not be testifying, as the witnesses reported that they did not see Plaintiff's alleged disruptive behavior. (*Id.*). Plaintiff alleges that defendant Reynolds became "reticent" when Plaintiff said "that was exactly the testimony he planned to draw-out from the 6 witnesses; that there was no disruptive behavior on the plaintiff['s] part." (*Id.*). Plaintiff also alleges that defendant Reynolds refused Plaintiff's request for an employee assistant to help Plaintiff prepare for his hearing. (*Id.*). Defendant Reynolds sustained all six charges in the report. (*Id.*). Plaintiff appealed and filed a grievance in relation to the fraudulent misbehavior report. (*Id.*).

On March 17, 2011, the Willard Evaluation Review Committee ("ERC") met to determine whether Plaintiff should remain at Willard. (*Id.* at ¶ 19). Defendant Caslin was the chair of the ERC. (*Id.*). Plaintiff alleges that he was not informed that the hearing was taking place and was not present at the hearing. (*Id.*). Plaintiff also was not informed of the accusations against him or given the opportunity to contest the accusations or to present mitigating evidence. (*Id.*). Plaintiff alleges that he did not learn of the hearing until after it had occurred, when the ERC terminated Plaintiff from Willard. (*Id.*). Superintendent Ricky Barlett ("Barlett") and Supervisor Philip Overfield ("Overfield") allegedly concurred in the ERC determination. (*Id.*). The ERC evaluation review recommending Plaintiff's removal from Willard is attached as Exhibit E to Plaintiff's complaint. Plaintiff subsequently filed a grievance stating that the ERC violated his due process rights. (*Id.*).

On April 13, 2011, Plaintiff's parole was revoked, and a 10–month assessment was imposed for his failure to complete the Willard program. (*Id.* at ¶ 20). Plaintiff subsequently filed a writ of habeas corpus in the Supreme Court for Seneca County on May 6, 2011, arguing that he was enti-

tled to immediate release from prison because Willard is a liberty interest program, and he did not receive due process when he was terminated from the program and was retaliated against at Willard. (*Id.* at ¶ 21; Dkt. 1 at Ex. F). Plaintiff's writ was denied by both the New York State Supreme Court and the Appellate Division, Fourth Department. (*Id.* at ¶ 21). Plaintiff alleges that he is currently seeking leave to appeal to the New York State Court of Appeals. (*Id.*).

On January 17, 2012, Plaintiff finished serving his ten-month time assessment, and was released back into the community from Bane Hill Correctional Facility. (*Id.* at ¶ 22). Plaintiff was subsequently in prison for parole violations. (*Id.* at ¶ 23).

## *PROCEDURAL HISTORY*

Plaintiff filed his complaint on May 28, 2013, alleging violations of 42 U.S.C. § 1983 against defendants Peters, Reynolds, Barlett, Overfield, and Caslin, in their individual and official capacities, for violation of his Fourteenth Amendment due process rights and retaliation. (Dkt. 1). On July 28, 2013, Plaintiff's claims against Defendants in their official capacities were dismissed pursuant to the Eleventh Amendment. (Dkt. 7).[3] On September 17, 2013, the summonses were returned unexecuted as to defendants Overfield and Caslin. (Dkt. 8).

On October 1, 2013, Assistant Attorney General J. Richard Benitez ("A.A.G. Benitez") filed a "Suggestion of Death Upon the Record," noting that defendant Caslin died on March 13, 2013. (Dkt. 11). The notice provided that if Plaintiff failed to make a motion for substitution of a party within 90 days, the claims against defendant Caslin would be dismissed pursuant to Fed.R.Civ.P. 25. (*Id.*). On October 17, 2013, Plaintiff filed a motion for substitution of a party to replace defendant Caslin. (Dkt. 13).

On October 28, 2013, A.A.G. Benitez was directed to notify the Court by November 12, 2013, as to whether the Attorney General would represent defendants Caslin and Overfield, and to inform the Court of any names and addresses of any successors or representatives for those parties. (Dkt. 15 at 4). A.A.G. Benitez was also notified that the Suggestion of Death Upon the Record filed on October 1, 2013 (Dkt. 11), was "a nullity" because it did not comply with Fed.R.Civ.P. 25(a). (Dkt. 15 at 1–2).[4]

Plaintiff also moved for a temporary restraining order and preliminary injunction on October 28, 2013, arguing that two parole officers in Brooklyn, New York, were enforcing a special condition of release which required Plaintiff to enter and complete a drug treatment program, and that Plaintiff risks having his parole revoked because he did not meet the requirements to enter certain programs. (Dkt. 14). Plaintiff's motion for a temporary restraining order and preliminary injunction was denied because Plaintiff failed to show ir-

---

**3.** . Plaintiff argues that "[t]he Official Capacity claim[s] should stand." (Dkt. 36 at 1). Although Defendants move , to dismiss the claims against them in their official capacities (Dkt. 32–1 at 3), these claims were previously dismissed in a Decision and Order dated July 28, 2013. (Dkt. 7). To the extent Plaintiff requests that this Court reconsider that prior Order, the Court declines to do so. The claims against Defendants in their official capacities were properly dismissed pursuant to

the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

**4.** Fed.R.Civ.P. 25(a) provides that a statement noting death, together with a notice of hearing, must be served on the parties as provided by Fed.R.Civ.P. 5 and on nonparties as provided by Fed.R.Civ.P. 4.

reparable harm insofar as his contention that his parole would be revoked was speculative. (Dkt. 22 at 2).

Defendants Peters, Reynolds, Barlett, and Overfield filed an answer on November 13, 2013. (Dkt. 16). On December 2, 2013, A.A.G. Benitez filed a declaration stating that he was seeking assistance from the Department of Corrections and Community Supervision ("DOCCS") counsel to identify defendant Caslin's estate representative or successor, and that the Attorney General could only appear on behalf of defendant Caslin's representative if the representative requested that the Attorney General appear on his or her behalf. (Dkt. 18 at ¶¶ 3–4). On December 9, 2013, Plaintiff filed a "Motion Opposing Defendant's Answer," requesting that the Court strike the answers and award Plaintiff damages. (Dkt. 21). Plaintiff argued that (1) the Attorney General did not comply with the Court's October 28, 2013 Order directing A.A.G. Benitez to inform the Court of successors or representatives to the Caslin estate; and (2) Defendants' answer was not in compliance with Local R. Civ. P. 7, because it did not include a notice of motion, affidavit, or memorandum of law. (*Id.* at 2–3).

On February 21, 2014, Defendants filed a Suggestion of Death Upon the Record, noting that defendant Caslin died on March 13, 2013; identifying defendant Caslin's estate representatives as Jonathon Caslin and/or Nicholas Caslin; and stating that the Attorney General would represent defendant Caslin's estate, so long as the representatives requested that the Attorney General undertake their representation. (Dkt. 26 at ¶¶ 2, 4).

The Estate of Caslin filed an answer to the complaint on March 28, 2014. (Dkt. 31). On April 3, 2014, the Court denied as moot Plaintiff's motion to substitute a party. (Dkt. 33).

On February 24, 2014, Plaintiff filed the instant motion for summary judgment on his fifth and six claims, against defendants Barlett, Overfield, and the Estate of Caslin. (Dkt. 27). Defendants filed a cross-motion for judgment on the pleadings and a response to Plaintiff's motion for summary judgment on March 28, 2014. (Dkt. 32). Plaintiff filed a reply to his motion for summary judgment on April 14, 2014 (Dkt. 35), and a response to Defendants' motion for judgment on the pleadings on May 13, 2014 (Dkt. 36).[5] The case was transferred to the undersigned on December 4, 2014. (Dkt. 37).

---

**5.** In his response to Defendants' motion for judgment on the pleadings, Plaintiff asks that the Court grant him summary judgment on his claims against defendants Reynolds and Peters. (Dkt. 36 at 5). Plaintiff moved for summary judgment on his fifth and sixth causes of action only in his original motion. (*See* Dkt. 7–2 at ¶ 6; Dkt. 27 at 9 ("Even though this motion does not seek Summary Judgment against Defendant Peters and Reynolds, plaintiff notes that it would be impossible to argue this motion without elaborating on circumstances which involve those two."); *id.* at 10 ("Plaintiff ask[s] the court to consider the following points of law, which there can be no genuine issue of material fact in dispute, and rule in his favor … by granting his Motion for Summary Judgment against

Defendants Caslin, Barlett, and Overfield.")). Plaintiff may not move for summary judgment against defendants Peters and Reynolds in his response to Defendants' motion for judgment on the pleadings. *See* L.R. Civ. P. 7(a)(1)–(3) (requiring a notice of motion, memorandum of law, and affidavit for all motions); *see also Campers' World Int'l, Inc. v. Perry Ellis Int'l, Inc.*, 221 F.R.D. 409, 409 (S.D.N.Y.2004) ("[I]t is improper for a party to file a successive motion for summary judgment which is not based upon new facts and which seeks to raise arguments it could have raised in its original motion."). As a result, the Court will only consider Plaintiff's motion for summary judgment as directed to his fifth and sixth causes of action against defendants Barlett, Overfield, and the Estate of Caslin.

## DISCUSSION

### I. Legal Standard

#### A. Motion for Judgment on the Pleadings

 Judgment on the pleadings may be granted pursuant to Fed.R.Civ.P. 12(c) "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999); *see also Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010) ("The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings.").

To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

A plaintiff must provide the grounds of his entitlement to relief through "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

 In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir.2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' ") (alteration in original) (internal citation omitted). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984).

#### B. Motion for Partial Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met

its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.'* " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ Although a *pro se* litigant's pleadings should be liberally construed "to raise the strongest arguments that they suggest," *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir.2009) (internal quotation and citation omitted), "proceeding pro se does not otherwise relieve [a litigant] from the usual requirements of summary judgment ....," *see Toliver v. City of N.Y.,* No. 10 Civ. 3165(PAC)(JCF), 2013 WL 6476791, at *2, 2013 U.S. Dist. LEXIS 186431, at *10 (S.D.N.Y. Dec. 13, 2013) (alteration in original) (internal quotations and citation omitted). *See also Gittens v. Garlocks Sealing Techs.,* 19 F.Supp.2d 104, 110 (W.D.N.Y. 1998) (although a court should grant "significant liberality in how *pro se* pleadings are construed ... proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment").

### C. Defendants' Citation to Unreported Cases in Their Memorandum of Law

Plaintiff argues in his reply to his motion for partial summary judgment that Defendants cited "at least 9 case[s] that are unreported or reported exclusively on computerized databases.... Such tactics are unfair and against the rules of the court." (Dkt. 35 at 1). Plaintiff asks the Court to reject Defendants' latest submission due to their citation to unreported cases. (*Id.*). In other words, Plaintiff appears to argue that he should be granted partial summary judgment and Defendants are not entitled to judgment on the pleadings because Defendants' papers relied on unreported cases that were not provided to Plaintiff.

Plaintiff's statement that Defendants' citation to unreported cases is "against the rules of the court" is inaccurate. The applicable Local Rule states that "[i]n cases involving a *pro se* litigant, counsel shall ... provide the *pro se* litigant ... with printed copies of decisions cited therein that are unreported or reported exclusively on computerized databases." L. R. Civ. P. 7(a)(8). Accordingly, counsel may cite to an unreported case as long as he provides a printed copy of the case to a *pro se* litigant.

■ It is not clear whether Defendants provided Plaintiff with copies of the unreported cases they cite in their memorandum of law. (Dkt. 32). To the extent Plaintiff argues that Defendants failed to provide him with printed copies of unreported decisions, nothing in the Local Rules requires the Court to strike Defendants' submission on this ground or grant the relief sought by the *pro se* party. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001). If counsel did not provide Plaintiff with copies of unreported cases, counsel is reminded that in the future, he must provide printed copies of any unreported cases or cases which are reported exclusively on computerized databases to Plaintiff, pursuant to L.R. Civ. P.

7(a)(8). However, because the Court determines that Plaintiff is not entitled to partial summary judgment for the reasons set forth below, and Defendants are entitled to judgment on the pleadings at least in part, the Court will not grant Plaintiff relief to which he is not otherwise entitled based on Defendants' alleged failure to follow the Local Rules.

## II. Plaintiff's Retaliation Claims

Plaintiff's first and second causes of action are for retaliation, in violation of the First Amendment to the United States Constitution. (Dkt. 1 at ¶¶ 25–26). Plaintiff's retaliation allegations are based on (1) defendant Peters' drafting and submitting a fraudulent disciplinary report against Plaintiff, because Plaintiff had accused defendant Peters of assaulting another Willard participant (*id.* at ¶ 25), and (2) defendant Caslin's "[making] good on his threat to make sure that plaintiff did not finish the Willard program," because Plaintiff had written a letter which questioned the propriety of his continued participation in Willard's drug and alcohol treatment program (*id.* at ¶ 26). Defendants argue that Plaintiff's claims must be dismissed because Plaintiff "fails to make allegations that support each element of retaliation." (Dkt. 32–1 at 5).

■■■■ Courts must approach inmate claims of retaliation "with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001). Accordingly, plaintiffs in retaliatory motive cases must plead "specific and detailed factual allegations which amount to a persuasive case" or "facts giving rise to a colorable suspicion of retaliation." *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). A First Amendment retaliation claim requires that the plaintiff allege "(1) that the speech or conduct at

issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009).

### A. Protected Speech or Conduct

Defendants do not appear to dispute that Plaintiff engaged in protected speech or conduct. Plaintiff argues that his statement regarding defendant Peters' conduct "expressed concern regarding his personal safety, i.e.; a petition to government for redress of grievances...." (Dkt. 35 at 2).

■■■■ Plaintiff engaged in a protected activity when he filed a statement against defendant Peters. "Reporting the wrongdoing of corrections officers and other prison officials ... qualifies as protected speech under the First Amendment." *Ahlers v. Grygo,* No. 02–CV–3256 (JG)(LB), 2009 WL 3587483, at *4, 2009 U.S. Dist. LEXIS 99988, at *12 (E.D.N.Y. Oct. 27, 2009). However, it is less clear whether Plaintiff's letter to the Office of Alcohol and Abusive Services, DOCCS, and the Division of Parole questioning his placement at Willard was protected conduct. Nonetheless, because Defendants do not appear to dispute the fact that Plaintiff's actions were protected speech or conduct, *see Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 841 (10th Cir.2005) ("merely including an issue within a list [is not] adequate briefing"), the Court declines to dismiss Plaintiff's retaliation claims on this basis.

### B. Adverse Action

■■■■ "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Amaker v. Fischer,* No. 10–CV–0977A(Sr),

2014 WL 8663246, at *7, 2014 U.S. Dist. LEXIS 136117, at *18 (W.D.N.Y. Aug. 27, 2014), *adopted,* No. 10–CV–0977(A), 2014 WL 4772202, 2014 U.S. Dist. LEXIS 134777 (W.D.N.Y. Sept. 24, 2014) (quotation omitted). Defendants do not dispute that the alleged filing of a false misbehavior report, or removing Plaintiff from Willard, were adverse actions.

■ It is well-settled that filing a false misbehavior report against an inmate out of retaliatory animus constitutes an adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004). Furthermore, removal from Willard also constitutes an adverse action. *See Ramsey v. Goord,* 661 F.Supp.2d 370, 399 (W.D.N.Y.2009) ("It is also undisputed that Defendants' removal of Plaintiff from the CAD Program was an adverse action, in satisfaction of the second element of a retaliation claim."), *adopted,* 661 F.Supp.2d 370 (W.D.N.Y.2009); *see also Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998) ("prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights."). Therefore, Plaintiff's allegations satisfy the second element of a First Amendment retaliation claim.

## C. Causation

■ To plausibly allege causation, a plaintiff "must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Burton v. Lynch,* 664 F.Supp.2d 349, 367 (S.D.N.Y.2009) (internal quotations and citation omitted) (alteration in original). Circumstantial factors indicating retaliatory motive include: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) an inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his

motivation. *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002).

■ Plaintiff has plausibly alleged facts supporting at least two of the causation factors. First, Plaintiff has alleged temporal proximity between his protected activities and the alleged retaliatory conduct. The Second Circuit Court of Appeals has held that the passage of "only six months" is sufficient to support an inference of causal connection. *See Espinal,* 558 F.3d at 129. According to the complaint, Plaintiff reported defendant Peters' alleged assault of another inmate on February 23, 2011 (*id.* at ¶ 13), the alleged retaliatory disciplinary report was filed on March 12, 2011 (*id.* at ¶ 15), and Plaintiff was dismissed from Willard on March 17, 2011 (*id.* at ¶ 19). Under the circumstances, the alleged retaliatory actions occurred less than one month following Plaintiff's protected conduct.

Plaintiff also has plausibly alleged facts supporting the second causation factor because he claims that he has a good disciplinary record. (*See* Dkt. 1 at ¶ 24 (asking the "Court to consider the fact that he has served over 5½ years in state custody and he [has] never received a misbehavior report.")).

Defendants argue that the third and fourth causation factors weigh in their favor because Plaintiff was not vindicated at a subsequent hearing, and there are statements by Defendants regarding their non-retaliatory motive for taking the alleged adverse actions attached as Exhibit D and E to Plaintiff's complaint. (Dkt. 32–1 at 5).

Despite the fact that two of the causation factors may weigh against Plaintiff, he has adequately alleged his retaliation claims at this early stage of the litigation. *See Burton,* 664 F.Supp.2d at 368 ("Plaintiff has met his burden in pleading a prima

**122**

facie case of retaliation under the First Amendment. So long as a plaintiff has elaborated his claim with sufficient non-conclusory factual allegations to raise a 'persuasive' or even 'colorable' claim of retaliation, the claim should survive the motion to dismiss stage.") (citing *Flaherty,* 713 F.2d at 13); *Read v. CalaBrese,* No. 9:11–CV–0459 (GLS/DEP), 2013 WL 5506344, at *17, 2013 U.S. Dist. LEXIS 144824, at *39 (N.D.N.Y. Aug. 29, 2013) ("Liberally construed, Read's amended complaint alleges that causation is premised upon the close proximity in time between the grievances filed by him, and the allegedly retaliatory false misbehavior report issuance.... At this early stage of the litigation, such allegations are sufficient to satisfy the causation element."), *adopted,* No. 9:11–cv–459 (GLS/DEP), 2013 U.S. Dist. LEXIS 143713 (N.D.N.Y. Oct. 4, 2013). Accordingly, Defendants' motion for judgment on the pleadings as to Plaintiff's retaliation claims is denied.

### III. Plaintiff's Due Process Claims

Plaintiffs third, fourth, fifth, and sixth causes of action are for violation of his due process rights pursuant to the Fourteenth Amendment. (Dkt. 1 at ¶¶ 27–30). Defendants argue that Plaintiff's due process claims must be dismissed because Plaintiff did not have a liberty interest in remaining at Willard. (Dkt. 32–1 at 3).

Section 1983 requires a plaintiff to "show that the conduct in question deprived him of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law." *Reed v. Medford Fire Dep't, Inc.,* 806 F.Supp.2d 594, 609 (E.D.N.Y.2011) (citing *Washington v. Cnty. of Rockland,* 373 F.3d 310, 315 (2d Cir.2004)). The Fourteenth Amendment provides that "[n]o State shall

... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Although prisoners retain some rights under the due process clause, "those rights are somewhat muted by institutional concerns inherent in a correctional system." *Zavaro v. Coughlin,* 970 F.2d 1148, 1152 (2d Cir.1992).

In raising a due process claim, a plaintiff must first allege that the challenged action infringed a constitutionally protected property or liberty interest. A prison disciplinary hearing implicates a protected property interest if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)) (alterations in original).

Second, a plaintiff must allege that he was deprived of the protected property interest without due process. *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998). It is well-established that inmates have the right not to be deprived of a liberty interest without due process, and that inmates have due process rights in prison disciplinary hearings. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004). However, "[p]rison inmates charged with disciplinary violations do not have 'the full panoply of rights' afforded to a defendant in a criminal prosecution." *Galan v. Laird,* No. 08–cv–267 (NG), 2010 WL 3780175, at *1, 2010 U.S. Dist. LEXIS 98864, at *3 (E.D.N.Y. Sept. 21, 2010) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). To comply with procedural due process, prison authorities must provide an inmate charged with a violation in a disciplinary hearing with: " 'advance written notice of the charges against him; a hearing affording him a reasonable oppor-

tunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.'" *Id.* (quoting *Sira*, 380 F.3d at 69). The requirements of due process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

### A. The ERC Hearing

Plaintiff's third cause of action purports to be for "First Amendment Freedom of Speech," for Defendants' failure to permit Plaintiff to testify before the ERC prior to his removal from Willard. (*Id.* at ¶ 27). Construing Plaintiff's allegations generously, it appears that Plaintiff is attempting to allege that his due process rights were violated because he was removed from Willard without being afforded an opportunity to appear before the ERC. Similarly, in the fifth and sixth causes of action, Plaintiff alleges that defendant Caslin deprived him of due process in relation to the ERC proceeding, and that defendants Barlett and Overfield were complicit in the deprivation of Plaintiff's due process rights regarding the ERC proceeding because they concurred in the ERC determination. (*Id.* at ¶¶ 29–30). Plaintiff alleges that the ERC terminated Plaintiff from Willard, and this resulted in Plaintiff's parole being revoked and Plaintiff being required to serve ten additional months in prison. (*Id.* at ¶¶ 19–20).

 The Court agrees with Defendants that Plaintiff's due process claims relating to the ERC hearing should be dismissed. Plaintiff did not have a liberty interest in remaining in the drug treatment program at Willard. *See Roundtree v. Bartlett*, No. 10–CV–0828A(F), 2011 WL 666173, at *3, 2011 U.S. Dist. LEXIS 14126, at *5–6 (W.D.N.Y. Feb. 11, 2011); *Marsh v. Bellinger*, No. 06CV464, 2009 WL 3429775, at *7, 2009 U.S. Dist. LEXIS 96505, at *21 (W.D.N.Y. Oct. 19, 2009). Because Plaintiff does not have a liberty interest in remaining at Willard, he does not have a right to due process procedures in connection with his removal from the facility. As explained by the United States Supreme Court in *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976):

> The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, and property without due process of law.... We reject at the outset the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a university professor was deprived of his job, a loss which was surely a matter of great substance, but because the professor had no property interest in his position, due process procedures were not required in connection with his dismissal. We there held that the determining factor is the nature of the interest involved rather than its weight.

*Id.* at 223–24, 96 S.Ct. 2532; *see also Blackshear v. Woodward*, No. 13–CV–1165 (FJS/CFH), 2014 U.S. Dist. LEXIS 90341, at *17 (N.D.N.Y. June 17, 2014) ("Blackshear lacked a protected liberty interest and, thus, necessarily lacks a Fourteenth Amendment procedural due process claim."), *adopted*, 9:13–CV–1165 (FJS/CFH), 2014 U.S. Dist. LEXIS 89173 (N.D.N.Y. July 1, 2014).

In *Roundtree*, the plaintiff claimed that the defendants "recycled" him through Willard, rescinded his discharge date, and removed him from the program without

due process. 2011 WL 666173, at *1–2, 2011 U.S. Dist. LEXIS 14126, at *4–5. The plaintiff had pleaded guilty to a parole violation and agreed to serve 90 days at Willard, but was removed based on five failed evaluations. *Id.* at *2, 2011 U.S. Dist. LEXIS 14126 at *5. The plaintiff claimed that he was not provided with written notice of why he was removed from Willard or what review process was available to him. *Id.* In dismissing the plaintiff's claims, the Court held that the plaintiff had no liberty interest in remaining at Willard; therefore, "his due process claim must fail." *Id.* at *3, 2011 U.S. Dist. LEXIS 14126 at *6–7.

In arriving at this conclusion in *Roundtree*, the Court looked to a similar case filed in this District, *Marsh v. Bellinger*, 2009 WL 3429775, 2009 U.S. Dist. LEXIS 96505. In *Marsh*, the plaintiff had agreed to enter Willard as part of his plea agreement to a parole violation, was given negative evaluations, and was ultimately removed from the program. *Id.* at *2–3, 2009 U.S. Dist. LEXIS 96505 at *7–8. The plaintiff claimed that he was unlawfully removed because the defendants had failed to investigate the charge. *Id.* at *1–2, 2009 U.S. Dist. LEXIS 96505 at *4. The Court held that the plaintiff had no liberty interest in remaining in Willard's drug treatment program, because "[t]here is no liberty interest in remaining in Willard or being housed at a particular facility . . . . plaintiff received the process due in [the] parole revocation hearing, where he had [pleaded] guilty." *Id.* at *7, 2009 U.S. Dist. LEXIS 96505 at *21; *see also Madison v. Grecco*, No. 9:08–CV–1125 (FJS/RFT), 2010 WL 935582, at *5, 2010 U.S. Dist. LEXIS 22986, at *10–13 (N.D.N.Y. Feb. 19, 2010) (dismissing the plaintiff's due process claim that he was denied the opportunity to participate in Aggression Replacement Training, and as a consequence was not eligible for parole on his original release date, because the plaintiff had no "right to participate in a rehabilitation program emanating from the Due Process Clause."), *adopted*, No. 9:08–CV–1125 (FJS/RFT), 2010 U.S. Dist. LEXIS 22983 (N.D.N.Y. Mar. 12, 2010); *Bratton v. Goord*, No. 02–CV–1557 (NAM/DRH), 2005 U.S. Dist. LEXIS 48071, at *16 (N.D.N.Y. Oct. 11, 2005) (where the plaintiff was "referred to the ERC for failing evaluations and lack of program progress and not for a violation of parole," he "was not entitled to a due process hearing at that point as there was no protected liberty interest. [The plaintiff] was not charged with a violation of parole and his parole was not revoked."), *adopted*, No. 9:02–CV–1557, 2006 U.S. Dist. LEXIS 101015 (N.D.N.Y. Feb. 3, 2006).

▮ Plaintiff attaches as Exhibit F to his complaint an appellate brief that appears to have been filed by his attorney in a related petition for a writ of habeas corpus in New York State Court. In his memorandum of law and the appellate brief, Plaintiff argues that because his removal from Willard resulted in a 10–month prison assessment, he should have been provided certain procedural protections prior to his removal. (Dkt. 36 at 2, Dkt. 1 at Ex. F).

▮ Here, Plaintiff was called before the ERC for "poor program progress" and misbehavior, not for a violation of his parole. (Dkt. 1 at 26). Plaintiff is correct that a state may not revoke his parole without providing minimal due process protections, including written notice of the claimed violations, disclosure to the parolee of the evidence against him, opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, a neutral hearing body, and a written statement of that body's decision. *Morrissey v. Brewer*, 408 U.S. 471, 481–82, 489, 92 S.Ct.

2593, 33 L.Ed.2d 484 (1972). However, a review of the documents attached to Plaintiff's complaint reveals that Plaintiff was afforded due process before his parole was revoked because a parole revocation hearing was held subsequent to the ERC determination, and Plaintiff appeared at the hearing and pleaded guilty to the violation. (Dkt. 1 at Ex. F, 31–33). Indeed, Plaintiff has not alleged that he was not given notice of the parole revocation hearing, but rather his due process allegations are focused on the ERC hearing. As the Court found in *Marsh*, "[P]laintiff received the process due in [his] parole revocation hearing, where he [pleaded] guilty." *Marsh*, 2009 WL 3429775, at *7, 2009 U.S. Dist. LEXIS 96505, at *21. *See also Castellar v. Fed. Bureau of Prisons*, No. 07–CV 3952(SLT)(CLP), 2009 WL 1515750, at *3–4, 2009 U.S. Dist. LEXIS 45468, at *8–9 (E.D.N.Y. May 29, 2009) (inmate has no liberty interest in one-year sentence reduction for successful completion of drug treatment program).

Plaintiff cites *Anderson v. Recore*, 317 F.3d 194 (2d Cir.2003), for the proposition that Willard is a liberty interest program, and termination from such a program represents a "grievous loss on the parolee." (Dkt. 27 at 5–6). The *Anderson* case is inapposite because it affirmed a parolee's entitlement to due process before his temporary release status is revoked, and the parolee in that case did not receive notice of the hearing at which his temporary release status was revoked. 317 F.3d at 195–96. Here, Plaintiff was present at his parole revocation hearing. Moreover, Plaintiff was not participating in a work release program, but rather in a drug treatment program at a facility that served as an alternative to incarceration.

▮ Accordingly, Plaintiff's third, fifth, and sixth causes of action are dismissed,[6] and Plaintiff's motion for summary judgment on his fifth and sixth causes of action is denied as moot.

**B. Plaintiff's Tier II Hearing**

Plaintiff alleges in his fourth cause of action that defendant Reynolds denied him an employee assistant to help him prepare for his Tier II disciplinary hearing. (Dkt. 1 at ¶ 28). Plaintiff also alleges that defendant Reynolds should have "[done] more" to "ascertain what plaintiff['s] witnesses saw or didn't see in relation to .... [the] fraudulent misbehavior report." (*Id.*). Defendants have not offered any argument as to why Plaintiff's due process claims relating to his Tier II hearing should be dismissed.

▮ Although inmates are not entitled to retained or appointed counsel in prison disciplinary hearings, "[p]rison authorities have a constitutional obligation to

---

6. Even if Plaintiff had stated a due process violation with respect to his absence from the ERC hearing, Plaintiff's claims against defendants Barlett and Overfield would be dismissed. Plaintiff's sole allegation against these defendants is that they were "complicit" in the deprivation of his rights because they concurred in the ERC determination. An individual must have been personally involved in the deprivation of a plaintiff's constitutional right to be held liable for that deprivation. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff's allegation that defendants Barlett and Overfield concurred in the ERC determination is insufficient to state a due process violation against them. *See Bryant v. Cnty. of Monroe*, No. 09–CV–6415–CJS, 2010 WL 4877799, at *4, 2010 U.S. Dist. LEXIS 126426, at *11–12 (W.D.N.Y. Nov. 22, 2010) ("the Court determines that Bryant has not [pleaded] or shown personal involvement by Stewart, who merely received a report concerning allegedly unconstitutional actions by the facility and agreed to the recommendation of the facility rabbi with regard to the resolution of whether Bryant should receive kosher meals.").

provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir.1988). New York's regulations entitle a prisoner to an employee assistant to help him prepare for a disciplinary hearing. *See* 7 N.Y.C.R.R. §§ 251–4.1, 251–4.2. The assistant "need only perform what the plaintiff would have done but need not go beyond the inmate's instructions." *Lewis v. Murphy,* No. 12–CV–268 (NAM/CFH), 2014 U.S. Dist. LEXIS 102659, at *35 (N.D.N.Y. June 27, 2014), *adopted,* No. 9:12–CV–00268 (NAM/CFH), 2014 U.S. Dist. LEXIS 101351 (N.D.N.Y. July 25, 2014).

 Plaintiff alleges that defendant Reynolds denied his request for an employee assistant at his Tier II hearing on March 16, 2011. (Dkt. 1 at ¶ 18). The failure to provide an inmate facing a Tier II hearing who is unable to conduct his own investigative work with an employee assistant states a due process violation. *Eng,* 858 F.2d at 897; *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998). Based on the allegations contained in Plaintiff's complaint, it appears that he was detained in an isolation cell and transferred prior to his disciplinary hearing (Dkt. 1 at ¶¶ 16–17), and would therefore have been unable to conduct his own investigation of the disciplinary charges. *See Ayers,* 152 F.3d at 80 ("a prisoner who has been transferred between facilities has a right to substantive assistance in preparing a defense."). Accordingly, Plaintiff has stated a claim that he was denied an inmate assistant at his Tier II disciplinary hearing.

Plaintiff also claims that defendant Reynolds should have "do[ne] more" to ascertain what Plaintiff's witnesses saw in relation to the alleged false disciplinary report. (*Id.* at ¶ 28). Plaintiff alleges that defendant Reynolds told him that the six witnesses Plaintiff had selected to testify would not be testifying as they did not see Plaintiff's alleged disruptive behavior. (*Id.* at ¶ 18). Plaintiff alleges that he told defendant Reynolds "that was exactly the testimony he planned to draw-out from the 6 witnesses; that there was no disruptive behavior on the plaintiff[']s part." (*Id.*).

 "Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate." *Robles v. Bleau,* No. 9:09–CV–0464 (TJM/GHL), 2008 U.S. Dist. LEXIS 110029, at *49–50 (N.D.N.Y. Sept. 12, 2008), *adopted,* No. 9:07–CV–0464, 2008 U.S. Dist. LEXIS 85249 (N.D.N.Y. Oct. 22, 2008). In other words, defendant Reynolds did not have a duty to investigate what Plaintiff's witnesses observed in relation to the alleged disciplinary infraction. Plaintiff himself alleges that the witnesses were not called because they reported that they did not observe anything related to the incident regarding Plaintiff, and defendant Reynolds had no duty to further investigate Plaintiff's claim.

However, Defendants offer no argument for dismissing Plaintiff's due process claim for violations that occurred at his Tier II disciplinary hearing, and it is not this Court's responsibility to raise and make counsel's arguments for them. *Murray v. Coleman,* No. 08–CV–6383L, 2014 WL 2993748, at *7, 2014 U.S. Dist. LEXIS 90884, at *17–18 (W.D.N.Y. July 2, 2014). Accordingly, Defendants' motion to dismiss Plaintiff's fourth cause of action is denied.

## IV. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because even if

Plaintiff's removal from Willard was based on false information, he was never deprived of any liberty interest, and he fails to plead facts suggesting that Defendants violated his due process rights. (Dkt. 32–1 at 6).

 Qualified immunity protects a government official from civil liability if his or her conduct " 'does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known.' " *Danahy v. Buscaglia,* 134 F.3d 1185, 1190 (2d Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (emphasis in original). "A right is considered to be 'clearly established' if 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* at 1190 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alteration in original). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness." *Manganiello v. City of N.Y.,* 612 F.3d 149, 165 (2d Cir.2010).

 The Court must evaluate a motion to dismiss based upon qualified immunity accepting " 'as true the material facts alleged in the complaint and drawing all reasonable inferences in plaintiffs' favor.' " *Warney v. Monroe Cnty.,* 587 F.3d 113,

120 (2d Cir.2009) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 249–50 (2d Cir.2001)). The Second Circuit Court of Appeals disfavors granting qualified immunity at the motion to dismiss stage. *See McKenna v. Wright,* 386 F.3d 432, 435–36 (2d Cir.2004) (Generally, "the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted.") (quoting *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983)) (alteration in original). Therefore, "a defendant asserting a qualified immunity defense on a motion to dismiss 'faces a formidable hurdle … and is usually not successful.' " *Barnett v. Mt. Vernon Police Dep't,* 523 Fed.Appx. 811, 813 (2d Cir.2013) (quoting *Field Day, LLC v. Cnty. of Suffolk,* 463 F.3d 167, 191–92 (2d Cir.2006)). "The defense will succeed only where entitlement to qualified immunity can be established 'based [solely] on facts appearing on the face of the complaint.' " *Id.* (quoting *McKenna,* 386 F.3d at 436).

 Defendants' argument that Plaintiff was not deprived of a liberty interest when he was removed from Willard fails to address why Defendants are entitled to qualified immunity for Plaintiff's due process claims stemming from his Tier II disciplinary hearing and Plaintiff's retaliation claims. Furthermore, the remaining claims at issue, i.e., Plaintiff's claims for retaliation, denial of an employee assistant, and inability to call witnesses, were well-established rights at the time of the alleged violations.[7] *See Sira,* 380 F.3d at 69

7. There is an argument that defendant Reynolds is entitled to qualified immunity because "it was objectively reasonable for him to believe that his conduct did not violate plaintiff's rights. Although the law was clearly established at the time of the hearing that an inmate has a right to call witnesses, it was

equally established that the inmate's right to do so is limited, and that a hearing officer has discretion to deny an inmate's witness requests on a number of grounds. Even if [Reynolds] erred in denying plaintiff's requests, then, it was reasonable for him to believe that he could validly do so on the

(inmate's right to due process at a prison disciplinary hearing is well-established); *Lee v. Coughlin*, 902 F.Supp. 424, 433 (S.D.N.Y.1995) ("Plaintiff alleges that defendant Mahoney violated his due process rights by denying his right to an assistant to aid him in preparing for his hearing. I find that by June 1992, there was a clearly established right to an inmate assistant in this Circuit and the contours of the right to an assistant to aid an inmate in SHU to prepare for a disciplinary hearing were sufficiently clear in 1992."); *Gill v. Calescibetta*, No. 9:00–CV–1553 (GTS/DEP), 2009 U.S. Dist. LEXIS 128255, at *32–33 (N.D.N.Y. Mar. 11, 2009) ("[t]he constitutional right at issue—the First Amendment right to be free from retaliation in return for having engaged in a protected activity—was clearly established at the time of the alleged violation in [2011]. From the limited record now before the court, I discern no basis to conclude that [Defendants] would have been reasonable in [their] belief [that their retaliatory action] did not violate plaintiff's First Amendment rights.") (internal citations omitted), *adopted*, No. 9:00–CV–1553 (GTS/DEP), 2009 U.S. Dist. LEXIS 27130 (N.D.N.Y. Mar. 31, 2009). Accordingly, Defendants' motion based upon qualified immunity is denied.

### *CONCLUSION*

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted in part and denied in part, and Plaintiff's motion for summary judgment is denied. Plaintiff's first and second causes of action alleging retaliation and his fourth cause of action alleging due process viola-

tions relating to his Tier II disciplinary hearing may proceed to discovery. Plaintiff's third, fifth, and sixth causes of action against defendants are dismissed, and the Clerk of Court is directed to terminate defendants Overfield and Barlett from this action.

SO ORDERED.

---

ground that the testimony of the witnesses in question was unlikely to be relevant or probative." *Barnes v. Henderson*, 628 F.Supp.2d 407, 413 (W.D.N.Y.2009). However, as with the underlying merits of the claims against defendant Reynolds, Defendants fail to raise this argument in support of dismissal of defendant Reynolds on the ground of qualified immunity. Therefore, the Court declines to dismiss the claims against defendant Reynolds on this basis.